Your argument is 20-1334 MedIdea v. L.L.C. Orthopaedics. Mr. Michaud, am I mispronouncing your name or pronouncing it correctly? That's fine, Your Honor. All right. Please proceed. Thank you, Your Honor. May it please the Court. Two very different claims are at issue here, but what's common to them both is that their plain, unambiguous language does not require two or more CAMs. And the district court's importation of that limitation into the claims was error. Mr. Michaud? Yes. This is Judge Wallach. In the red brief at 16, DePuy says, quoting, MedIdea conceded that it lacked evidence that the first convex portion of DePuy's accused product ever contacts the tibial post. Do you have evidence that the convex portion of the accused product does contact the tibial post? We have evidence that there are at least two points of contact, one on the concave surface of the CAM and one on the posterior convex portion. Wait, wait, wait, wait, wait. The question was convex, so we can eliminate it. Yes, Your Honor. Is the posterior one convex? Yes, it is, Your Honor. I'll ask the other side the same question. You can go ahead. Your Honor, this is Calvin Griffith. Are you intending to ask me now? Oh, no, no, no, no. No, no. So Claim 9 recites a structure having more than one physically separate and discontinuous point of CAM action as the knee moves from extension to flexion. It requires at least two points of CAM action that engage the post as the knee moves, but it does not require two or more CAMs. Claim 1 of the 280 patent is a static picture of the CAM mechanism of Figure 2D at or before 90 degrees of flexion. Unlike Claim 9, it does not recite movement of the knee from extension to flexion. The only contact required by Claim 1 is for the posterior convex surface of the CAM to contact the post at the position recited in the claim, at or before 90 degrees of flexion. Contact between other surfaces of the CAM structure and the post is neither required nor precluded. Again, the plain words of the claim do not require two or more CAMs. The patent specification provides no basis for a requirement of two or more CAMs. To the contrary, the specification teaches two ways to implement points of CAM action. By individual distinct CAMs or through a single CAM structure with multiple distinct CAM surfaces. It states at column four, lines 13 through 16, quote, the structures according to the invention may be individual distinct bars or may be connected to one another, forming points of contact as opposed to distinct structures themselves. So, it in essence says that we can... I'm sorry, which patent are you... I'm sorry, Your Honor. Are you looking at the 426? Whenever I refer to the patent, I'll refer to the 426 patent because the specifications are the same in most respects, but things appear in different places. So, I'm referring to the 426 patent, Your Honor. And I'm referring to column four, lines 13 through 16. So, column four, lines 13 through 16, in essence, says you can use individual CAMs or you can use a single CAM structure with multiple distinct CAMs. Why isn't the better reading of that is that you can either have all your CAMs connected to each other or you can have individual CAMs? Well, that's in essence what it says, but if the individual CAMs are connected together, it's a single structure. And then what you're talking about in the claims, both in the claims and in the specification, is points of CAM action as opposed to individual CAMs. But doesn't the spec consistently talk about interconnected CAMs? It does mention interconnected CAMs at points, but... In the description of the drawings, figure 2-D, figure 2-D illustrates the alternative use of interconnected CAMs with physically separate contact points. That's correct. They are interconnected. Later in the written description, it talks about, you know, again, referring to figure 2-D as showing as interconnected CAMs. They are interconnected, and therefore, they're a unitary structure. I don't understand. So they are... Interconnected structure described in the specification, and that structure requires multiple CAMs. It requires multiple points of CAM action, Your Honor, multiple CAMs. Let's just see. In column 3, lines 52 through 57, it says, although the term CAM or BAR are used to reference the stages of CAM action, it should be understood that the responsible structures may be implemented using any member or combination of elements operative to provide distinct stages of cooperation with the posterior surface of the superior post. And so, when you combine them into the figure 2-D arrangement of the patent, you have a single CAM structure with multiple points of CAM action. That's what the patent teaches. And so, if you turn to the prosecution history, there's nothing in the prosecution history that requires the claims to have two or more CAMs. The clear, unambiguous language of the claims do not require two or more CAMs, and it was error for the court to import that limitation into the claims. Well, the language in the claims is a CAM mechanism, and it doesn't exclude single CAMs. It doesn't explicitly include them. So, is it not correct that we would go to the specification to get clarity as to whether or not a CAM mechanism includes a single CAM or is limited to multiple CAMs? Right. I'm just wondering. CAM mechanism is used in Claim 1. It's not used in Claim 9, just to make that clear. The term CAM mechanism is used in a general sense to introduce the specific geometry that's claimed after that. And if you look, for example, at the brief description of the drawings, it says, Figure 1a is a drawing which illustrates a prior art CAM imposed mechanism in extension. So, that particular drawing has a single CAM. And so, the specification... You're not claiming the prior art with your claim, right? Figure 1 is the prior art. No, we're not, Your Honor, but I'm just saying that... The title of the patent says multiple CAM, doesn't it? Multiple CAM posterior stabilized knee prosthesis. That is what the title of the patent is, multiple CAMs. And then the district court concluded that your background and invention was essentially criticizing single CAMs, Harrington and Van Zyl, where there's just a single CAM going against the posterior surface. That's correct, a single individual CAM, but that's not what we're claiming. In Claim 9, we are claiming a unitary structure that has multiple points of CAM action. And that is supported by the specification with respect to Figure 2d and throughout the specification, where, for example, starting with the abstract... Figure 2d talks about interconnected CAMs. That's correct, interconnected to make a unitary structure. I don't think that helps you. Well, I was going to point you to the abstract, which right up front, it says the inventive component preferably includes additional points of CAM action usable separately or together. And then it explains what those various points of CAM action do as the knee moves from extension to flexion. And then down below, the points of CAM action may be implemented using any member or combination of elements operative to provide distinct stages of cooperation with the posterior aspect of the superior post. So it is not limiting itself to individual CAMs. The patent specification supports the idea that you can have a unitary CAM structure that has individual points of CAM action. And that's what's claimed in Claim 9. Claim 1 is a very different claim in the sense that it's a static picture of the CAM at or before 90 degrees of flexion. And it claims a different aspect of the invention, the geometric shape of that CAM in Figure 2D. It has a convex surface, two convex surfaces separated by a concave surface. But it doesn't say anything about requiring two or more CAMs. I want to move on to the second issue that the district court held that the points of CAM action in Claim 9 are convex. The plain language of Claim 9 of the 426 patent does not require convex points of CAM action. There's no lexicography or clear disavowal of claim scope that would support the importation of this limitation into claims and it was error for the lower court to do so. In the IPR, we didn't argue that the points of CAM action distinguish over the prior art because they're convex. The IPR panel construed Claim 9 without any shape limitation. So, it would have been impossible to distinguish over the prior art on the basis of CAM shape. Instead, we successfully argued that the unlabeled and undescribed line in the prior art drawing, which is shown at appendix page 2294, was not a CAM. And that's what the IPR panel held. So, the district court's reliance on the IPR... ...and the different patents. But my understanding is the district court relied on the fact that during the IPR proceeding, the patentee walked through the distinct points of CAM action and then clearly stated, quote, the distinct points of CAM action are implemented with CAMs having convex surfaces. Is he not correct? That is correct. That's what we said. But that's the implementation. That's not the invention. That's not what is claimed. Wasn't there a different point in the patent owner response where the patent owner said, characterized, quote, unquote, the disclosed and claimed invention, end quote, as having convex CAM action surfaces? No. There were two different statements made in the IPR brief. One of them had to do with the implementation, and the other had to do with the invention. When it talked about the implementation, it said that the CAM surface was convex. Are you familiar with the statement I'm referring to where the patent owner response said, quote, unquote, the disclosed and claimed invention? Yes, Your Honor. I am. Wasn't that described as being a convex CAM surface? No, Your Honor. Not in that particular statement. There were two statements made in that section of the brief. One of them had to do with the implementation, and the other one had to do with what the invention was. And where it talked about the invention, it didn't say anything about the shape of the CAM. It was only in the implementation statement where we mentioned that the implementation, the preferred embodiments, all had convex CAM shapes. We all heard the bell, Mr. Michaud, so why don't we hear from Mr. Griffith, and we'll restore your three minutes of rebuttal. Thank you, Your Honor. Thank you. Good morning, Your Honors, and may it please the Court. Let me start with the answer to Judge Wallach's question about the anterior convex. Pardon? The anterior portion of the attuned CAM, the convex portion of the attuned CAM. There is no evidence at all that that convex portion contacts the post. And in supplementing its contentions, MedIdea dropped the contention that the anterior portion contacts the post. And then in opposing our summary judgment motion, MedIdea never asserted that the anterior convex portion is a point of CAM action. So that contention, that position, that issue is gone. It's off the table. Thanks. Thank you. Your Honors, the specification of the patents in suit makes it clear and unmistakable that single CAM designs are the problem, and the invention is having multiple CAMs acting on the posterior side of the post. Multiple CAMs are the solution. Single CAMs are the problem. MedIdea's arguments in the IPR confirm this. All of the intrinsic and extrinsic evidence supports Judge Sorokin's claim construction, and the judgment of the district court should be affirmed. The claim terms at issue are CAM mechanism in the 280 patent, and then the description of the convex, concave, convex portions. And in the 426 patent, the claim term at issue requires more than one points of CAM action as the knee moves from extension to flexion. Both sides agree that these terms required construction, and the specification makes clear that in both cases, the claim terms are describing a mechanism that has two or more CAMs. In the 280 patent claims, the two convex portions are the CAMs, and in the 426 patent, Claim 9, the two or more points of CAM action are on the two or more CAMs. Starting with the specification, and as the panel noted, the title of each patent is Multiple CAM Prosthesis. And in the IPR, MedIdea relied on the title for construction of the multiple points of CAM action limitation. Consistent with the title, the common specification of the two patents is focused entirely on the use of more than one CAM acting during flexion in a prosthetic knee. And the specification criticizes the prior art single CAM approach. And, again, in the IPR, MedIdea itself emphasized that the problem with the prior art, deficiency was the word it used, as described in the very part of the specification we cite, was that prior art had only, quote, a single CAM contacted the posterior surface of the post. So that was their characterization of what the specification conveyed, and that's what they said in the IPR, which is part of the intrinsic record. After criticizing single CAM designs, the specification concludes, quote, the need remains for an improved distal femoral prosthesis having multiple distinct CAMs contacting a post on its posterior surface. And in the IPR, MedIdea argued that this very statement, and I'm quoting, conveys to one skilled in the art what is and what is not the disclosed and claimed invention. And that's at appendix page 1570. So MedIdea argued that this specific sentence limited the claims. And the sole inventor, Dr. Marcini, has even agreed and testified that using just one CAM, quote, would not be inventive. The disclosed and claimed invention has multiple CAMs contacting the post. The prosecution history also establishes that the use of multiple CAM members on the posterior surface was the reason for allowance of the 426 claims. That's at appendix 2035. And yet again in the IPR, MedIdea successfully argued that, and I'm quoting, the examiner's notice of allowance indicates both the applicant's and the examiner's understanding of the scope of Claim 9 and the feature of Claim 9 that distinguishes over the prior art. That is a clear assertion by MedIdea that the scope of Claim 9 is limited to multiple CAMs acting on the posterior surface of the post. And if that were not enough, the PTAB agreed with MedIdea that these statements limited the claimed invention. Much more intrinsic evidence and extrinsic evidence is cited in our brief. In contrary to MedIdea's assertion, the specification never states that the invention may be implemented with a single CAM, not once. It is hard to imagine a more clear-cut case of a narrow claim construction, whether it's by disavowal, whether it's by Phillips claim construction, whether it's by prosecution history disclaimer or even judicial estoppel, whether it's PsyMed, whether it's Phillips, whether it's AVID diabetes, whether it's personalized medicine, any of the relevant case law in this area one looks at would all dictate the exact same construction that Judge Sorokin arrived at. DePuy does not have multiple CAMs. It has a single CAM. You can look at the picture in our brief and see that. There's no doubt about this. Summary judgment is appropriate in this case, and the district court's judgment should be affirmed. Unless your honors have any questions to ask, I will surrender the remainder of my time. Hearing none, thank you. Let's hear back from Mr. McDonald. I want to address one of the questions about the accused product. There are, in fact, two convex portions of the accused product. One of them contacts the post. There's also a concave portion of the product that contacts the post. Claim nine requires multiple points of CAM action, which are multiple points of CAM action. The CAM action is a point of CAM action, I'm sorry, is defined as the surface of a CAM that contacts the post. The accused product does, in fact, have two points of CAM action, even though it is possible that what was called the anterior convex portion may not contact the post. Also, with respect to the idea that somehow we gave up some construction or we gave up a particular infringement contention, the lower court did not decide that we had done anything wrong with amending our contentions. They were accepted. We were never put in a position where we actually gave up something at this point other than by changing our infringement contentions within the time frame that the court allowed us to do that. I have nothing further unless the court has questions. Thank you. We thank both sides and the case is submitted.